

**ORDERED in the Southern District of Florida on November 09, 2010.**

*Paul G. Hyman, Chief Judge*
*United States Bankruptcy Court*

___

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF FLORIDA
                  West Palm Beach Division

In re:                          Case No.: 08-29769-BKC-PGH
GINN-LA ST. LUCIE LTD.,         All Cases Jointly Administered
LLLP, et al.,
     Debtors.                   Chapter 7
_____/

In re:
GINN-LA QUAIL WEST LTD.,
LLLP, et al.,
     Debtors.
_____/
```

### ORDER ON TRUSTEE'S MOTION TO COMPEL

**THIS MATTER** came before the Court upon Drew M. Dillworth's ("Trustee") *Motion to Compel Compliance with Demands for Turnover Pursuant to 11 U.S.C. §§ 521(a) & 542(e)* (D.E. #526), and supplements thereto, (collectively, the "Motion").

**BACKGROUND**

The Motion asserts that (1) Morris, Manning & Martin, LLP; (2) Baker & Hostetler, LLP; (3) Kirkland & Ellis, LLP; and (4) Berger Singerman, P.A., (collectively, the "Law Firms") provided legal representation to certain or all of the Debtors in connection with Credit Suisse loans consummated in June of 2006, the ensuing defaults on those loans, and/or efforts to restructure them. The Trustee maintains that the Debtors' former "parent" companies have wrongfully withheld production of information and documents related to this representation pursuant to a pre-petition *Joint Defense, Common Interest and Information Sharing Agreement* ("JDA").

### A. *The Joint Defense, Common Interest and Information Sharing Agreement*

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 23, 2008 ("Petition Date"), and the Trustee was appointed. The JDA was executed on May 1, 2008, nearly six months prepetition, by seventeen entities including eleven Ginn entities and six Lubert-Adler entities (collectively, the "JDA Parties"). The Ginn JDA Parties include two of the Debtors in this jointly administered case, Ginn-LA Quail West Ltd., LLLP, and Ginn-LA St. Lucie Ltd., LLLP. Robert F. Masters signed as President for each of the eleven Ginn JDA Parties. Among other things, the JDA recitals state that the JDA "Parties believe they have certain common interests arising out of the Company's ongoing restructuring initiative, including, without limitation, certain efforts taken in

anticipation of a possible filing under chapter 11 of title 11 of the United States Code and certain actions related thereto." JDA at 1.

The JDA also provides:

The Parties agree that, except as otherwise provided in this Agreement, Confidential Information shall continue to be held confidential and subject to the attorney-client privilege, the work product doctrine and all other applicable privileges, even if an adversity of interest may subsequently be discerned or arise between or among the Parties.("Privilege Protection Clause") JDA ¶ 1(m).

On September 13, 2010, the Court entered an *Order Directing Parties to File Joint Stipulation in Connection With Trustee's Motion to Compel* ("Order")(D.E. #546), wherein the Court directed the Trustee and the Law Firms to file a stipulation as to which JDA Parties each law firm represented and the timing of such representation. The Trustee and the Law Firms arrived at a stipulation regarding which parties each firm represented and the dates of such representation. Although not directed to do so by the Court's Order, the stipulation also included the scope of each firm's representation. On October 11, 2010, the Trustee filed charts reflecting the stipulation ("Representation Stipulation") (D.E.# 568).

### B.   *The Response*

Berger Singerman, P.A. filed a *Limited Response in Opposition to the Trustee's Motion to Compel* ("Ltd. Resp.") (D.E. #532), a *Supplemental Memorandum of Law in Support of its Limited Response* ("Supp. Resp.")(D.E. #541), and a *Response in Opposition to*

-3-

*Trustee's Supplemental Memorandum Concerning Issues to Be Addressed at Upcoming Evidentiary Hearing on His Motion to Compel* (D.E.#561) (collectively, the "Response"). Morris, Manning & Martin, LLP, and Kirkland & Ellis, LLP joined in the Response.[1]

The Response does not dispute the Trustee's entitlement to any work product created by attorneys for the Debtors or to any attorney-client privilege belonging exclusively to the Debtors. Ltd. Resp. at 5. The Response maintains that the asserted attorney-client privilege is for materials prepared by counsel for non-debtors that may have been delivered to Berger Singerman in its capacity as counsel for the Debtors. *Id.* The Response further states that the privilege is neither sought to be applied to work done by counsel for the Debtors, nor is it sought to be applied to work done by counsel jointly for Debtors and non-debtors within the scope of the JDA. Supp. Resp. at 2. Specifically, the Response notes that the following communications and work product shared with the Debtors is sought to be protected: A) all work done exclusively for non-debtors before implementation of the JDA; and B) all work done exclusively for non-debtors after implementation of the JDA, as long as the work was outside the scope of the common representation. *Id.*

C.   ***The Credit Suisse Transaction***

It is undisputed that $675,000,000.00 in loans consummated on

---

[1] Berger Singerman, P.A., Morris, Manning & Martin, LLP, and Kirkland & Ellis, LLP are referred to herein collectively as the "Respondents".

-4-

June 8, 2006 and administered by Credit Suisse, Cayman Islands Branch, was guaranteed by the Debtors; that the Debtors' guarantees were secured by liens on substantially all of the Debtors' assets; and that the Debtors did not receive any of the Credit Suisse loan proceeds (the "Credit Suisse Transaction"). *See* Mot. at 3; *Lubert-Adler Def.'s Mot. To Dismiss* at 2 (Adv. No. 10-2976, D.E. #76).

## CONCLUSIONS OF LAW

### I.   *The Issue and Arguments of the Parties*

The Trustee argues that the JDA is an impermissible attempt by the Debtors' former "parent" entities to "contract out" of *Weintraub*, wherein the Supreme Court determined that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343,358, 105 S.Ct. 1986, 1996 (1985).

The Response argues that *Weintraub* is inapplicable to the facts of this matter because the asserted attorney-client privilege belongs to non-debtors who seek to protect work performed exclusively for them. The Response maintains that the privilege is not sought to be applied to work done by counsel for the Debtors, nor is it sought to be applied to work done by counsel jointly for the Debtors and non-debtors within the scope of the JDA. Thus, the Response urges the Court to enforce the JDA's Privilege Protection

Clause and deny the Trustee's Motion.

The sole issue before the Court is whether the JDA permits the Respondents to refuse to provide information to the Trustee that would otherwise be discoverable. For the reasons stated below, the Court finds that it does not.

## II. *Enforceability of the JDA* [2]

The JDA's Privilege Protection Clause purports to protect all applicable privileges "even if an adversity of interests may subsequently be discerned or arise between or among the JDA Parties". This provision is contrary to the well-established rule that joint clients may not assert the attorney-client privilege against each other in subsequent adverse litigation between them. *In re Mirant Corp.*, 326 B.R. 646, 650 (Bankr. N.D. Tex. 2005)(*quoting Brennan's, Inc. v. Brennan's Rests., Inc.,* 590 F.2d 168, 172 (5th Cir.1979)[3] ("Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation."); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970), *cert. denied* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) ("In many

---

[2] Although the Respondents argue that enforceability of the JDA is not before the Court, they squarely raised the issue at the hearing and in their papers. *See* Response; Aug. 31, 2010 Hr'g Tr. 25:14 - 26:22.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(*en banc*)the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other.")).

The Restatement (Third) of the Law Governing Lawyers (2000) ("Restatement") is the only authority for the proposition that joint-clients or co-clients may, by prior agreement, circumvent the well-established rule and continue to shield information from one another in subsequent adverse litigation between them. The Restatement § 75, the "Privilege of Co-Clients" [4] provides:

> (1)  If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§ 68-72 and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.
>
> (2)  Unless the co-clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between the co-clients in a subsequent adverse proceeding between them.

The subsection (2) provision, that parties may agree to circumvent the established rule, is found only in the 2000 revision of the

---

[4] The co-client or joint-client privilege applies when multiple clients are represented by the same counsel on a matter of common interest. In contrast, the common-interest privilege applies when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities. *See In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)(discussing contours of co-client privilege and common-interest privilege). The Restatement § 76, which concerns the common-interest privilege, contains similar language to that found in § 75(2). This language permits parties to contract out of the subsequent adverse litigation exception to the common-interest privilege. Respondents have not specifically indicated whether the privilege they assert is a § 75 joint-client privilege, or a § 76 common-interest privilege. However, the Court's rationale and ruling would apply to both situations because enforcement of the JDA's Privilege Protection Clause in bankruptcy proceedings would contravene public policy and the goals of bankruptcy law.

Restatement. The Reporter's Note to § 75 discloses that,

> *No direct authority* has been found for giving effect to agreements among co-clients that the privilege shall be preserved in subsequent adverse proceedings between them. The approach taken in Subsection (2) . . . is consistent with the theory of the co-client privilege and with the basis for removing the privilege in subsequent adverse proceedings, the presumed intent of the co-clients and *fairness considerations*.

Restatement §75 cmt d, Reporter's Note (emphases added).

It is not surprising to the Court that there exists no direct authority for giving effect to such agreements, especially in the context of bankruptcy proceedings. While the JDA's Privilege Protection Clause might indeed further the presumed intent of the parties, its enforcement in this matter risks frustrating the Trustee's statutory duty to investigate the financial affairs of the Debtors while providing special protection to those who allegedly controlled the Debtors prior to the Petition Date. The ability of such provisions to shield wrongdoers at the expense of a debtor's creditors renders their enforcement in bankruptcy proceedings against public policy.

The Respondents argue that in *Teleglobe* the "Third Circuit cited with approval the section of the Restatement 3d Governing Lawyers that agreements like the JDA in this case, do preserve the attorney-client privilege of documents shared under a common interest agreement after the parties become adverse." The Third Circuit did note that "[a]ccording to the Restatement, it is permissible for co-clients to agree in advance to shield information from one another in subsequent adverse litigation,

though the drafters concede finding no direct authority for that proposition". *In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 366 (3d Cir. 2007). However, having made that observation, the Third Circuit specifically made no prediction as to whether Delaware courts would enforce such agreements. *Id*. at 366 n.23. In *In re Mirant*, the only case to consider such an agreement which contracted around the adverse litigation exception, the court refused to give the agreement effect because to do so in the context of bankruptcy would have been against public policy. *Mirant*, 326 B.R. at 652. This Court finds *Mirant* persuasive and well-reasoned.

In *Mirant*, the same law firm represented both the debtor and its former parent in connection with a transaction through which the parent divested itself of its interest in the debtor. The parent and the subsidiary had executed a written Protocol for Legal Representation which provided that the law firm would not share confidential information with the other client even if the law firm's advice to each client was adverse or perceived to be adverse to one of them. The *Mirant* analysis noted that while "the attorney-client privilege is meant to foster open communications between the attorney and client" . . . "it has long been recognized that situations exist in which compelling reasons, such as the promotion of important public policy, require that a privilege give way in favor of disclosure." 326 B.R. at 654 n.18 (citations omitted). The *Mirant* court found that extending special protection beyond that

which exists in ordinary joint representations would be contrary to public policy. *Id.* at 652. Recognizing the goals of bankruptcy law, the *Mirant* court refused to allow the parent to use the attorney-client privilege to prevent the law firm's disclosure to the debtor of confidential information related to the corporate spinoff. *Id*. at 654. While reaching no conclusions regarding the facts involving the transaction, the court found that it would be "bad precedent to carve in the case at bar a limitation on the ususal rule respecting assertion of privilege in the investigations of claims arising from transactions where common counsel was used." *Id.*

The Respondents attempt to distinguish *Mirant* by stating that the policy concerns of *Mirant* are not implicated because the information at issue in this case was shared, whereas *Mirant* "involved a joint representation governed by a written Protocol that allowed one party to submit information in confidence to an attorney representing two parties - i.e., the attorney was authorized to withhold information related to the joint representation from the second party." The Court understands the Respondents' argument to be that the documents at issue were prepared pursuant to an individual representation of non-debtors and then shared with the Debtors subject to the protection of the JDA. This distinction is of little, if any, consequence. With the exception of Berger Singerman's representation of the Debtors, the Court's review of the Representation Stipulation belies the notion

that there was any individual representation of any of the JDA parties concerning the Credit Suisse Transaction. Baker & Hostetler, LLP, and Kirkland & Ellis, LLP jointly represented Debtors and non-debtors alike in connection with the Credit Suisse Transaction.[5] Morris, Manning & Martin, LLP, jointly represented all of the Ginn JDA Parties in connection with the Credit Suisse Transaction, and from 2007 forward jointly represented all of the JDA Parties including the Lubert-Adler defendants. "Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confidential communication [*sic*] are not within the privilege in subsequent adverse proceedings between the co-clients." *Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group* (*In re Hechinger Inv. Co. of Del.*), 285 B.R. 601, 612 (D. Del. 2002). The Representation Stipulation indicates that Berger Singerman, P.A. solely represented the Debtors starting in mid-August 2008 through the filing of the Debtors' bankruptcy. Thus, pursuant to *Weintraub*, any privilege relating to Berger Singerman's representation passed to the Trustee's control on the Petition Date.

Even if there had been no joint representation of the JDA Parties concerning the Credit Suisse Transaction, the Court would

---

[5]The Representation Stipulation indicates that: a) Baker & Hostetler, LLP represented all of the JDA Parties except Ginn-LA CS Holding Co., LLC and Ginn-LA International Business Co.; and b) Kirkland & Ellis, LLP represented all of the JDA Parties except Ginn-LA International Business Co.

-11-

not enforce the JDA for policy reasons. Unlike the Protocol in *Mirant,* in this case the JDA plainly recites that the JDA Parties entered into the agreement in "anticipation" of a possible bankruptcy filing under Chapter 11. The JDA then provides for preservation of any applicable privilege even if an adversity of interest may subsequently be discerned or arise between or among the parties. In the Court's view, the drafting of an agreement in contemplation of bankruptcy whose purpose is to protect a debtor's adverse insider's prepetition communications makes the facts of this matter even more egregious than the facts presented in *Mirant*. Enforcement of such an agreement violates public policy.

The Respondents argued that there is no law requiring the attorney-client privilege to be abrogated in the face of a written agreement preserving the privilege to non-debtors under the JDA. However, there is also no law requiring such an agreement to be enforced. In addition to noting that there is no direct authority for giving effect to a joint defense agreement which preserves the privilege in subsequent adverse proceedings between joint clients, the Reporter's Note to Restatement § 75 comment d, suggests that subsection 2's approach is consistent with *fairness considerations*. It is apparent that the Restatement commentators did not consider bankruptcy proceedings when drafting § 75, because the enforcement of such an agreement, designed to provide special protection to insiders who controlled a debtor prepetition, would be decidedly unfair in the context of bankruptcy. Enforcement of the JDA - which

was executed in anticipation of a possible bankruptcy filing - creates a situation that is ripe for abuse. The special protection provided by the JDA's Privilege Protection Clause invites collusion among the entities that allegedly controlled the Debtors and creates the potential for wrongdoers to shield evidence of their wrongdoing. Therefore, it is against public policy and unfair to the Debtors' estates and their creditors to handcuff the Trustee's pursuit of claims for the benefit of creditors by withholding documents that would be discoverable if not for the JDA.

Furthermore, while the Court makes no determination regarding the facts underlying the Credit Suisse Transaction, it is undeniable that the entire transaction had the potential to be a fraudulent conveyance from the start. There is quite obviously an inherent conflict in any transaction of this nature where a subsidiary pledges its assets but receives no cash consideration. The adversity of interest between the Debtors and other JDA Parties arose at the conception of the transaction which resulted in the Debtors guaranteeing $675 million in loans with liens on substantially all of the Debtors' assets, without the Debtors' receiving any of the loan proceeds in return. This adversity of interest occurred well in advance of the May 2008 execution of the JDA and renders the JDA *void ab initio.* Thus, to the extent that documents were shared between adverse co-clients, there should have been no reasonable expectation of privacy.

The JDA also states that it is intended as the embodiment of

the Parties' prior oral agreements. JDA ¶ 1(a). The potential for abuse created by a prepetition agreement providing special protection to a debtor's insiders is further magnified by the attempt to retroactively apply the agreement to documents shared prior to its execution on the basis that it is the embodiment of the Parties' purported prior oral agreements. Having determined that the JDA was void from the beginning, the Court need not reach the parties' arguments concerning whether the JDA protects documents pre-dating the JDA's May 1, 2008 execution. Any prior oral agreements preventing the Trustee's discovery of documents prepared by counsel jointly representing the Debtors and other JDA Parties would fail for the same reasons that the JDA itself fails. The interests of the Debtors and other non-debtor JDA Parties became adverse at the conception of the transaction which resulted in the Debtors guaranteeing the Credit Suisse loans with liens on substantially all of their assets without the Debtors receiving any cash consideration. The non-debtor JDA Parties may not use the JDA and its embodiment of "prior oral agreements" to prevent the Trustee's discovery of otherwise discoverable documents concerning the Credit Suisse Transaction which were prepared by counsel who jointly represented Debtors and non-debtors. The Court, while finding no merit in Respondents' argument that the subject documents must be returned or are otherwise specially protected

because of the JDA,[6] makes no determination whatsoever of any other independent claims of attorney-client or work product privilege, or the right to assert the crime-fraud exception to defeat such claims.

### III. *Work Product*

Finally, the Response argued that courts applying New York rules reject the view that internal work product is subject to production in response to a client demand. The Response maintains that this rule applies to New York counsel and to Florida counsel. However, the Court finds that the Response misstates New York law concerning work product. As stated in *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 91 N.Y.2d 30, 34-36 (1997), New York follows the majority view that upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding, the client is presumptively accorded full access to the entire attorney's file with narrow exceptions. In adopting the majority view, the *Sage* court agreed with the Restatement § 58(2) which accords former clients access to inspect and copy any documents possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse. *Id.* at

---

[6] The Response's remaining arguments have been rendered moot by the Court's determination that the JDA is *void ab initio*. The Response had argued that the JDA is an executory contract and that the Trustee's rejection of the executory contract did not relieve the Trustee of his obligation to abide by its termination provisions. The Response stated that upon withdrawal, the JDA required the Trustee to return privileged documents produced by non-debtor JDA Parties which are now in the possession of the Debtors or the Debtors' counsel. The Response also argued that granting the Trustee's Motion would require the Court to ignore a basic tenet of contract construction, i.e., that a contract should not be interpreted in a manner that renders any of its provisions meaningless.

35.

The Response's statement of the law actually reflects the minority view, pursuant to which the end product of an attorney's work remains property of the client, while the attorney's work product leading to the creation of such end product remains property of the attorney. *Id.* The *Sage* court specifically rejected the minority position which "unfairly places the burden on the client to demonstrate a need for specific work product documents in the attorney's file in a represented matter." *Id.* at 36. This Court agrees with *Sage* that, under New York law, it is the attorney's burden to rebut the presumption of full client access by showing that substantial grounds exist to refuse work product to a former client in a represented matter.

The Response also summarily stated that the minority New York rule concerning work product would apply to Florida counsel. However, the Response provided no authority for this statement. The only authority cited by Florida counsel, *Donahue v. Vaughn*, 721 So. 2d 356, (Fla. 5th DCA 1998), addressed whether counsel was required to provide documents to a client free of charge. The Court finds no merit in the Response's argument that New York and Florida counsel may summarily withhold work product in response to a client demand.

## **CONCLUSION**

The Court finds that the JDA was *void ab initio*. Non-debtor insiders may not contract around the subsequent adverse litigation

-16-

exception to provide themselves special protection in anticipation of bankruptcy. The JDA does not enable the Respondents to refuse to turnover information that is otherwise discoverable. In making this determination, the Court makes no determination as to any other independent claims of attorney-client or other privilege.

## ORDER

Therefore the Court, having heard the arguments of counsel, reviewed the applicable law and submissions of the parties, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Trustee's Motion is **GRANTED.** To the extent that the JDA Parties have objected to providing otherwise discoverable information on the basis that it is protected by the JDA, such objection is overruled. The JDA Parties shall turnover such otherwise discoverable information within 30 days of entry of this order.

2. The Court retains jurisdiction to determine what, if any, costs and fees for the assembly and delivery of relevant documents must be paid by the Trustee.

# # #

Trustee's counsel shall serve a copy of this Order on any party in interest to this contested matter who does not receive electronic service.